## PEOPLE v BROWN

Docket No. 57065. Submitted May 19, 1982, at Detroit.—Decided September 22, 1982.

Clark M. Brown was convicted by a jury in Detroit Recorder's Court of first-degree murder and was sentenced, Samuel C. Gardner, J. The Court of Appeals granted the people's motion to affirm defendant's conviction. Defendant then filed a delayed motion for a new trial with the trial court. The motion was denied, and the Court of Appeals denied defendant's motion for leave to appeal that decision. The defendant sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded the case to the Court of Appeals as on leave granted, 411 Mich 860 (1981). On remand, *held:*

1. There was sufficient evidence of premeditation and deliberation to support a conviction of first-degree murder.

2. Defendant was not denied a fair trial by the prosecution's alleged failure to indorse and produce certain alleged res gestae witnesses.

3. The trial court's failure to give a jury instruction on specific intent as recommended by defendant does not mandate reversal of defendant's conviction.

4. Reversal on the ground that defendant's trial attorney failed to object to the trial court's failure to instruct on specific intent is not required because the evidence of intent to kill was overwhelming.

5. The decision of defendant's trial attorney not to move for

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 45.

[2, 3] 40 Am Jur 2d, Homicide § 439.

[4] 29 Am Jur 2d, Evidence §§ 723, 724.

[5] 21A Am Jur 2d, Criminal Law § 1010.
   58 Am Jur 2d, New Trial § 41.
   81 Am Jur 2d, Witnesses § 2.

[6] 21A Am Jur 2d, Criminal Law §§ 984, 985.
   58 Am Jur 2d, New Trial § 161.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

the production of six alleged res gestae witnesses appears to have been a matter of trial strategy which is not subject to review.

6. Even if defendant's trial attorney erroneously informed defendant that if he took the witness stand on his own behalf the prosecutor would be able to impeach his credibility by introducing evidence of defendant's prior conviction, the error was harmless since the evidence against defendant was overwhelming and defendant would not have had a reasonably likely chance of acquittal even absent the alleged error.

7. Defendant's contention that his trial attorney committed a serious mistake by failing to move to suppress evidence which was the fruit of defendant's allegedly unlawful arrest requires that the case be remanded to the trial court for an evidentiary hearing since it cannot be determined from the trial court record whether defendant's arrest was unlawful and, if it was, whether the evidence which was introduced was a fruit of that arrest.

Remanded.

1. HOMICIDE — FIRST-DEGREE MURDER — SECOND-DEGREE MURDER.

First-degree murder is distinguished from second-degree murder in that the prosecution must prove that the death was the result of a premeditated, deliberate intent to kill before a defendant can be convicted of first-degree murder (MCL 750.316, 750.317; MSA 28.548, 28.549).

2. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBERATION — INFERENCES.

Neither premeditation nor deliberation need by proven by direct evidence in a first-degree murder trial; the requisite state of mind can be inferred from all of the facts and circumstances.

3. HOMICIDE — MURDER — PREMEDITATION — DELIBERATION.

Factors to be considered in making a determination of whether or not a defendant in a homicide case acted with premeditation and deliberation include: 1) the previous relationship of the parties; 2) the defendant's actions prior to the actual killing; 3) the circumstances of the killing itself; and 4) the defendant's conduct after the homicide.

4. WITNESSES — RES GESTAE WITNESSES.

A res gestae witness is one who is an eyewitness to some event in a continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the commission of the charged offense.

5. WITNESSES — RES GESTAE WITNESSES — PROSECUTING ATTORNEYS — INDORSEMENT AND PRODUCTION OF WITNESSES — APPEAL.

It is the duty of the prosecuting attorney to indorse and produce all res gestae witnesses in a criminal prosecution; if the prosecutor fails to comply with this duty, it is the defendant's responsibility to move for a hearing during trial, or for a new trial prior to seeking appellate review; failure to move for either will foreclose appellate review in the absence of a finding that manifest injustice would result.

6. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — NEW TRIAL.

A convicted person is entitled to a new trial if his attorney does not perform at least as well as a lawyer with ordinary training and skill in the criminal law and does not conscientiously protect his client's interest undeflected by conflicting considerations; in addition, a defendant may be deprived of a fair trial if his attorney commits a serious mistake without which the accused would have had a reasonably likely chance of acquittal.

7. APPEAL — *EX PARTE* AFFIDAVITS — RECORD ON APPEAL.

*Ex parte* affidavits, filed for the first time in an appellate brief, may not serve to enlarge the record on appeal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Michael Bakaian,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Stuart B. Lev),* for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and N. J. KAUFMAN and R. A. BENSON,* JJ.

R. A. BENSON, J. Defendant was convicted of first-degree murder in violation of MCL 750.316; MSA 28.548, following a jury trial held between January 18, 1977, and January 20, 1977. He was sentenced to serve a life term in prison. On March

* Circuit judge, sitting on the Court of Appeals by assignment.

14, 1978, this Court granted plaintiff's motion to affirm defendant's conviction (File No. 77-1020). On March 1, 1979, defendant filed a delayed motion for a new trial with the trial court. Following the trial court's denial of that motion, this Court denied defendant's motion for leave to appeal that decision (File No. 45777). Defendant then sought leave to appeal to the Supreme Court. In lieu of granting leave, the Supreme Court remanded the case to this Court as on leave granted. *People v Brown,* 411 Mich 860 (1981).

The events out of which defendant's conviction arose occurred on September 16, 1976. Three prosecution witnesses testified that they were near the intersection of Calvert Street and Hamilton Street in Detroit in the early afternoon on September 16th when defendant approached the victim, Edward Harris. An argument ensued between the two over money allegedly owed defendant by Harris when defendant reached into his car, pulled out a rifle and fired two shots at Harris. After firing the shots, defendant got into his car and sped off. Harris managed to run to a nearby market where he collapsed.

The prosecution also introduced the testimony of Timimimka Hughlett who testified that at approximately 1 a.m. on September 16, 1977, she and a woman named Star accompanied defendant to a location in Detroit where Star attempted to purchase narcotics from Harris. Star gave Harris $10 in exchange for a package containing powder which Hughlett subsequently determined to contain Avon powder. When she informed defendant of her suspicions, defendant approached Harris and demanded the return of the $10. Defendant was unable to obtain satisfaction, whereupon he returned to his automobile and drove away. As he

did so, he told Hughlett that he was going to "burn" Harris.

Hughlett then accompanied defendant to a motel room where they remained until approximately 8 a.m. Defendant then left the motel and returned at approximately 12 p.m. carrying a .22 caliber rifle. Shortly thereafter, defendant left the motel with the rifle and returned at approximately 3:30 p.m. at which time he told Hughlett that he had "burned" Harris.

Shortly after the shooting, a bystander flagged down a Detroit police officer and told him of the shooting. He in turn radioed the information to a police dispatcher. Another Detroit police officer, James Pigeon, testified that he received information that there was a man at the Monterey Motel who was wanted in connection with a shooting. When he arrived at the motel, he had a conversation with a person who pointed at defendant, who was walking down a street near the motel. The officer arrested defendant and discovered a motel room key during a subsequent search of defendant. Pigeon returned to the motel and seized a .22 caliber rifle and seven rounds of ammunition which were introduced as evidence.

Defendant was later identified at a police lineup by the three eyewitnesses to the shooting. Also following his arrest, defendant gave a statement to police in which he admitted shooting Harris. He claimed that he shot Harris in self-defense. Those statements were introduced in evidence by the prosecution.

On appeal defendant makes numerous assignments of error. He first contends that on his first appeal he was denied effective assistance of appellate counsel. Since the remedy for such a claim is a new appeal, and since we have decided to ad-

dress all of defendant's other claims of error, we find it unnecessary to address this issue. *People v Oster (On Resubmission),* 97 Mich App 122, 141; 294 NW2d 253 (1980), *lv den* 411 Mich 920 (1981).

Defendant next complains that there was insufficient evidence of premeditation and deliberation to support a conviction of first-degree murder. We disagree. In determining whether sufficient evidence exists to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

First-degree murder is distinguished from second-degree murder, MCL 750.317; MSA 28.549, in that the prosecution must prove that the death was the result of a premeditated, deliberate intent to kill. However, neither premeditation nor deliberation need be proven by direct evidence. The requisite state of mind can be inferred from all of the facts and circumstances. *People v Hoffmeister,* 394 Mich 155; 229 NW2d 305 (1975).

The factors to be considered in deciding whether there was sufficient evidence from which the jury could infer premeditation and deliberation are: (1) the previous relationship of the parties; (2) the defendant's actions prior to the actual killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. *People v Johnson,* 93 Mich App 667; 287 NW2d 311 (1979).

With respect to the first factor, the evidence taken in a light most favorable to the prosecution establishes that defendant had been engaged in a dispute with Harris over the course of a 13-hour period prior to the shooting with regards to a drug

sale. From these facts, the jury could have inferred that defendant had a motive to kill Harris. *People v Boose,* 109 Mich App 455; 311 NW2d 390 (1981).

With regard to the second factor, on several occasions prior to the shooting, defendant told his companion that he intended to "burn" Harris because Harris refused to return money that defendant claimed to be owed. Furthermore, before meeting with Harris, defendant left his motel room carrying a .22 caliber rifle.

With respect to the third factor, defendant drove to the area where Harris was standing, parked his car and began arguing with Harris about the money that was allegedly owed. The argument had lasted for about five minutes when Harris began walking in defendant's direction. At that point, defendant reached into the car, pulled out the rifle and shot Harris. The eyewitnesses testified that Harris did not reach in his pocket or make any other gestures to indicate that he was armed.

Finally, defendant's conduct following the shooting was consistent with premeditation and deliberation. After shooting Harris, defendant returned to his car and sped away. He returned to his motel room where he told Hughlett that he had "burned" Harris.

It is clear from the foregoing that sufficient evidence was introduced to support defendant's conviction.

Defendant next claims that this case should be remanded so that a hearing may be conducted to determine whether the prosecution's failure to indorse and produce six alleged res gestae witnesses deprived defendant of a fair trial.

A res gestae witness is one who is an eyewitness to some event in a continuum of a criminal transaction and whose testimony will aid in developing

a full disclosure of the facts surrounding the commission of the charged offense. If the prosecutor fails to comply with his duty to indorse and produce all such witnesses, it is defendant's responsibility to move for a hearing during trial, or for a new trial prior to seeking appellate review. *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973). Failure to move for either will foreclose appellate review in the absence of a finding that manifest injustice would result. *People v Pearson,* 404 Mich 698, 722; 273 NW2d 856 (1979).

Since defendant did not move to indorse these witnesses at trial, and because he did not claim in his motion for a new trial that these witnesses should have been indorsed, we find that defendant was not denied a fair trial by their nonproduction. *People v Jeffrey Johnson,* 113 Mich App 650; 318 NW2d 525 (1982). In making this determination, we note that there was a stipulated waiver by defendant at trial concerning the production of four witnesses who were indorsed in the information. From this record we cannot determine whether those persons are among the persons about whom defendant now complains. In any event, of the six witnesses listed by defendant, two are arguably not res gestae witnesses. The testimony of the remaining four witnesses would have been cumulative of the testimony of the three eyewitnesses who did testify.

Defendant next complains that the trial court's failure to give the recommended jury instruction on specific intent mandates reversal of his conviction.

In its instructions to the jury, the court stated that, in order to convict defendant of first-degree murder, it was necessary for the jury to find that defendant premeditated an intent to kill. It fur-

ther instructed that, in order to find intent to kill, the jury was required to find that defendant committed the act while intending that it result in death. It went on to state that the distinguishing feature between first-degree and second-degree murder is that the prosecution must prove that the death was the willful result of a premeditated, deliberate intent to kill. It finally informed the jury that willful means an intentional carrying out of the plan which had been made.

Viewing these instructions as a whole, we are satisfied that the court adequately explained this element to the jury. *People v Perry,* 114 Mich App 462, 465-467; 319 NW2d 559 (1982); *People v Johnson, supra.* Even if the instruction were erroneous, the evidence of actual intent to kill was so overwhelming that such error would not require reversal. *People v Burgess,* 96 Mich App 390, 399-400; 292 NW2d 209 (1980).

Defendant's final claim of error was that he was denied effective assistance of trial counsel.

A convicted person is entitled to a new trial if his attorney does not perform at least as well as a lawyer with ordinary training and skill in the criminal law and does not conscientiously protect his client's interest undeflected by conflicting considerations. *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976). In addition, defendant may be deprived of a fair trial if his attorney commits a serious mistake without which the accused would have had a reasonably likely chance of acquittal. *Garcia, supra; People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969).

Defendant claims that his trial counsel committed numerous mistakes which deprived him of a fair trial. He first claims that his attorney's failure to object to the trial court's failure to instruct on

specific intent constituted such a mistake. Although we believe that such failure did constitute a mistake, since, as discussed earlier, the evidence of intent to kill was overwhelming, reversal is not required on this ground.

Defendant also complains that counsel's failure to move for the production of the six alleged res gestae witnesses constituted a serious mistake. As we noted in the earlier discussion of the res gestae witness issue, two of those witnesses were arguably not res gestae witnesses. Furthermore, since there were already three eyewitnesses to the shooting, all of whom denied that defendant acted in self-defense, and since it may well be that the decision not to seek production of these witnesses was to avoid having that testimony further corroborated, such decision appears to have been a matter of trial strategy which is not subject to review. *People v Moreno,* 112 Mich App 631; 317 NW2d 201 (1981).

Defendant next contends that his attorney erroneously informed him that if he took the witness stand on his own behalf the prosecutor would be able to impeach his credibility by introducing evidence of his prior conviction. He claims that such information was inaccurate because the conviction was too old to be admissible. The only support in the record for this claim is an *ex parte* affidavit defendant filed with this Court. It is well established that *ex parte* affidavits, filed for the first time in the appellate brief, may not serve to enlarge the record on appeal. *People v Hoag,* 113 Mich App 789; 318 NW2d 579 (1982). In any event, defendant does not claim in his affidavit that if he had been properly advised he would have testified on his own behalf or that such testimony would have differed from the statement he gave to police

following his arrest. Finally, in view of the over-whelming evidence against defendant, we are convinced that even in the absence of the alleged error, defendant would not have had a reasonably likely chance of acquittal.

Defendant's final claim with respect to this issue is that his attorney committed a serious mistake by failing to move to suppress evidence which was the fruit of defendant's allegedly unlawful arrest. Defendant claims that, as a result of his unlawful arrest, the police seized a .22 caliber rifle which was introduced against him; an incriminating statement was taken from him which was also introduced; and a lineup was conducted at which he was identified by the three eyewitnesses.

We note that defendant sought an evidentiary hearing on this issue as part of his motion for a new trial. However, the trial court failed to conduct such a hearing. On the record before us, we cannot determine whether defendant's arrest was unlawful and, if it was, whether the evidence which was introduced was a fruit of that arrest. Without such a determination, we are unable to judge the seriousness of the alleged error. Therefore, we find it necessary to remand to the trial court for an evidentiary hearing on this issue. *People v Davis,* 102 Mich App 403; 301 NW2d 871 (1980).

Remanded. We retain jurisdiction. The remand hearing is hereby ordered to take place within 60 days.